HASTINGS (GOULD v.). See Case No. 5,-639.

═══

## Case No. 6,200.

HASTINGS et al. v. GRANBERRY et al.

[3 Cranch, C. C. 319.] [1]

Circuit Court, District of Columbia. May Term, 1828.

STATUTES — MARYLAND ACT OF DESCENTS — NON-RESIDENT INFANTS—DECREES.

1. This court, at Washington, cannot decree the sale of the lands of an intestate, if any of the heirs are non-resident infants.

2. Quaere, whether this court, as a court of chancery, can decree partition or sale of the real estate of an intestate, under the Maryland act of descents (Acts 1786, c. 45, § 8)?

3. A decree must be according to the allegata as well as probata.

This was a bill in chancery, filed May 19, 1825, by the widow and adult heirs of John Granberry, against his infant heirs; stating that John Granberry, of Norfolk, died seized of lots 2, 3, 4, and 5, in square 249, in the city of Washington, and praying that the lots may be divided among the complainants, if divisible without loss, &c., and, if not so divisible, that they may be sold, and the proceeds divided among the complainants, &c., and that a commission may issue "to five discreet, sensible men," to inquire whether the estate may be divided without loss, &c., to ascertain the value, and to divide the same if divisible, &c., and, if not, to report, &c., "agreeably to the act of assembly in such case made and provided." And as the said minors reside out of the jurisdiction of this court, the complainants or petitioners

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

pray that a guardian may be appointed, to appear and answer; or that a commission may issue to three persons, to appoint a guardian, &c., and for further relief. And the widow, Susanna Granberry, states that she is the mother and natural guardian of the defendants; that her husband left no other means for the support of the children; and prays that she may receive their share, to be applied to their support. The bill does not state that John Granberry died seized of an estate of inheritance, nor does the widow ask that her dower may be assigned. On the same day a commission was issued to appoint a guardian, and to take the answers of the infants, which was done and returned, July 8, 1825. By their answer they assent to the prayer of the bill. On the 12th of April, 1826, a commission was issued to five persons, to make partition, &c., if, &c., (having due regard to the widow's dower,) and if not, &c., to report, &c., and the value, &c., "according to the act of assembly in such case made and provided." On the 26th of April, 1826, the commissioners gave notice to the complainants that they should proceed to execute the commission on the 10th May, 1826; on which day they reported that the land could not be divided without loss, &c., and gave their reasons, and valued the land at $480, and laid off the widow's dower, and assigned her lot 5, during her life. On the 13th of January, 1827, the court ratified and confirmed the report; the widow filed her assent in writing that the land should be sold free of her dower, upon receiving a compensation. The heirs, who were of full age, refused to take the land at the valuation, and it was sold by the commissioners, and the court allowed her one ninth of the purchase-money in lieu of her dower.

Before CRANCH, Chief Judge, and THRUSTON and MORSELL, Circuit Judges.

CRANCH, Chief Judge (after stating the case as above). The court is now moved to ratify the sale; and, as non-resident infants are concerned, it is proper that the court should be well ascertained of its authority to sell their interest in the land, so that they may not be unjustly deprived of their estate, and that the purchasers under the decree of this court, or under the authority of the commissioners, may be safe. The first question is, whether, under the eighth section of the act of descents of Maryland (Acts 1786, c. 45, § 8), a sale can be made of the interest of a non-resident infant in lands lying in this county, which descended to the infant? The words of that section are general, namely:—"In case the parties entitled to the intestate's estate cannot agree upon the division thereof, or in case any person entitled to any part be a minor, the court of the county where the estate lies shall issue a commission, to ascertain whether the estate can be divided without loss, and to ascertain the value, and to make partition if it can be

done without loss; or to sell it if it cannot be so divided, and if none of the heirs will take it at the appraisement." The sale is to be made under the direction of the commissioners, and the purchase-money to be justly divided among those entitled thereto; but by the act of 1797 (chapter 114, § 6) the sale is not valid until ratified by the court.

There is nothing in the act of 1786 which excepts the interests of non-resident infants from its operation. The proceeding is in rem; the land is to be divided or sold. It is, therefore, no objection to say that the court has no jurisdiction over the person of the non-resident infant, unless the non-residence of the infant should take away the power which is given to the court by the latter part of the eighth section, where the expression is also general, that "if any minor shall be interested, who hath not a guardian, the court from which the commission issued shall appoint a guardian for the purpose." Yet the fifth section of the act of 1797 (chapter 114) says: —"And whereas it is doubtful whether or not there is any method of proceeding whereby a person holding land, jointly or in common with an infant residing out of the state, may obtain partition of the said land, be it enacted that, on a bill filed for the purpose of obtaining partition of land, held jointly or in common with an infant residing out of the state, the chancellor, on the complainant's motion, may direct a commission to issue to three persons, such as he shall approve, authorizing them, or any two of them, to go to the infant and appoint a guardian, for the purpose of answering and defending the suit. And authorizing them, likewise, to take the answer and return it to the court; and, on receiving such answer, there may be the same proceedings as if the defendant had been regularly summoned, and had been heard by guardian appointed by the court." The doubt, thus expressed, is only as to the power to make partition; yet it must have been equally doubtful whether there was a power to make sale of the land of a non-resident infant; for the power to make partition under the act of 1786 is co-extensive with the power to make sale, and any doubt as to one, must have extended to the other.

Perhaps it may be said that the twelfth section of the act of 1785 (chapter 72) gives the chancellor the power to decree a sale of the lands of a non-resident infant. The words are, "That in case any infant, idiot, or person non compos mentis, hath, or shall hereafter have, a joint interest, or interest in common, with any other person or persons," "in any lands" &c. "and it shall appear to the chancellor, upon application of any of the parties concerned, and upon appearance of the infant," &c. "as aforesaid, and hearing and examination of all the circumstances, that it will be for the interest and advantage, both of the infant," &c. "and of the other person or persons concerned, to sell such lands," &c. "or any part thereof, the chancel-

lor may order, and direct such lands," &c. "to be sold," &c. The expression here also is general, "any infant," 'which comprehends non-resident infants. But the expression is equally general in the eighth section of the act of 1794 (chapter 60), "That in case any infant," &c. "hath, or shall hereafter have a joint interest, or interest in common, with any other person or persons," "in any lands," &c. and it shall appear "to the chancellor upon application of any of the parties concerned, and upon the appearance of the infant by guardian to be appointed by the chancellor for that purpose, and for the purpose of answering and defending on the part of such infant," &c. "and upon hearing and examining all circumstances, that it will be for the interest and advantage of all persons concerned, to make partition of such lands," &c. "the chancellor may order and decree partition," "in the same manner, and under the same regulations as if all parties were of full age;" yet the act of 1797 (chapter 114, § 5), shows that such doubts were entertained of the power of the chancellor to decree partition of the land of a non-resident infant, as to induce the legislature to pass a law to remove them. Here, again, the power to make partition was co-extensive with the power to make sale, and the doubt as to the former was equally applicable to the latter. The legislature removed the doubt as to partition, but not as to sale; so that it now remains quite as "doubtful whether or not there is any method of proceeding whereby a person holding land jointly or in common with," a non-resident infant, may obtain a sale of the land, as it did in 1797, whether he could obtain partition.

Perhaps it may be said that this doubt has been removed by the act of 1799 (chapter 79, § 4), by which it is enacted, "That if any bill in chancery hath been or shall be filed against an infant out of the state, there shall, at the chancellor's discretion, be the same proceedings, and the chancellor may decree as if the infant were of full age." But if the infant defendant and all the other parties were of full age, the chancellor would have no power to decree a sale of the land against the will of either of the parties. He could only decree partition. The doubt expressed in the act of 1797 (chapter 114, § 5), was probably the doubt of the chancellor himself, who had well considered the act of 1786 (chapter 45, § 8), as well as the several acts enlarging his powers as chancellor, and his general jurisdiction in equity. It may, therefore, be considered a reasonable doubt, and I do not think that a court of law or of equity should order the sale of an infant's real esate, upon doubtful authority.

There are also other objections to the ratification of the sale. The bill is of a doubtful character. It is addressed to the court, as a court of chancery, yet it seeks relief under the act of 1786 (chapter 45, § 8), which gives relief in a court of law only, unless the land lies in two or more counties, which is not the case here. It does not aver that John Granberry died seized of an estate of inheritance; so that it does not appear that the complainants have any interest in the land. It seeks to have the land divided among the complainants, to the exclusion of the infants. The widow, (although one of the complainants,) does not ask for dower, nor aver that she is entitled to it. It is a general principle that the decree for a plaintiff must be according to the allegata, as well as the probata, and be consistent with the prayer of the bill. For these reasons, I think, the sale ought not to be ratified.